TEK Global, S.R.L. Mr. Gibson? Good morning, Your Honors. May it please the Court, Stan Gibson on behalf of Sealant Systems International and Accessories Marketing, Inc. Mr. Gibson, would you concede that absent waiver, AMI lacks standing? No, AMI certainly has standing. AMI asserted the patent when it owned it. The cases all address that issue of the cases where the lawsuit's been filed, the patent is not owned at the time it's asserted. So we're looking at Article III standing in that situation. Article III standing requires injury in fact. Obviously, if you don't own a patent and you assert it, without owning it, you don't have injury in fact. Is it correct that the assertion was made when it was not owned? I'm referring to the statement in the yellow brief in which TEK says, Sealant and AMI cannot deny that when they added the 581 patent to this case, they falsely asserted that AMI owned it when Sealant first filed the suit. That was a typographical error, Your Honor. That is not a correct statement. The patent was purchased after SSI filed the declaratory relief suit on the 110 patent. But at the time that AMI added itself into the case, it owned the patent. And I think that's all that's required for Article III standing. Would you agree though that procedurally it was completely improper to add AMI as a party plaintiff with an independent cause of action? I would agree that it's an unusual procedural posture to have. However, there was a stipulation where TEK Corp was later added. The parties agreed to it. The reason for that was that patent litigation is expensive. I think both parties felt that it was more efficient to handle both cases together because the technology was so closely related. And these are companies that do directly compete with each other. So it was done procedurally. Where's that next dip in the record? I can find that, Your Honor, as we're talking about it. I did want to cover the injunction issue as well, where they started. And I understand the court did stay the injunction. I want to address one particular point on that issue. In particular, the lost sales issue. Wait, wait, wait. Why don't you find the reference first? If you can't find it now, you can do it on your rebuttal. It's in footnote 2 of our brief, Your Honor. And it is cited at A6467-69. Going back to the injunction issue. I want you to start with the 581 pact. You heard the discussion about that. Why are these claims, other than claim 42, not anticipated or made obvious by the 282? You have the testimony by your own expert that there's a port here. The patent talks about seals. What's missing? Well, because what the argument is on the other side is they just look at the word receptacle. The receptacle has to be formed in the housing. And in claim 27, that's explicitly stated. It has to be formed in the housing, and it has to be in communication with the airflow path. All we have in 282 is a hole. There's no structure there. There's nothing that communicates with the airflow path. There's nothing that's formed in the housing. It's just an absence of structure. And so what the claim 27 is talking about is not just a receptacle. It has to be a receptacle formed in the housing, and it has to be in communication with the airflow path. And to do those things, to be in communication with the airflow path, it also has to sealingly receive. I don't recall the district court relying on connected to the airflow path. He seemed to think that it wasn't sealingly received. Am I correct about that? He did focus on the sealingly received part of it. That's not correct, right, because in the 282, it is sealingly received, is it not? In the 282, the receptacle is not sealed. There's no receptacle. There's a port that sealingly receives, but no receptacle. So you have a one-piece structure, and both experts testified that there is no receptacle in 282 that sealingly receives. And the district court did, Your Honor is correct, the district court did rely on that testimony. It also relied on the fact that there was no receptacle formed in the housing, and a hole is simply not formed in the housing. And both experts' testimony is certainly substantial evidence on which the jury could rely to find the patent valid. Can we treat, for present purposes, the depiction of the invention in the 110 as being the accused device here? It was represented in court by Tech as the commercial embodiment of the 110 patent. It's not the only embodiment in the 110 patent, but yes. Well, I'm asking you. Yes. Because you both have created a very confusing record here, because there's all sorts of testimony about the accused device, but there's no depiction of it. So can we treat the 110 as a depiction of the accused device? Yes, Your Honor. I think that would be fine. I apologize that there's not a citation in the record. That's probably because the infringement issue is not up on appeal on the 581, so we didn't put a picture of the accused device. But the accused device does look like the figures that are in the 110 patent. Okay, so how is the 110 depiction not the same as the 282? In other words, the problem I'm having is seeing how the 282 could not anticipate when the accused device here infringes. The 110, Your Honor, has a receptacle and a court. If you look at figure two, Your Honor, you see the device that the sealant canister is going to go into. That is the port, and the port comes out of, you can see that it's going to be inserted into the receptacle. And that receptacle is, in fact, in communication with the air flow back. The receptacle is what, 48? I believe it is 49. 48 is the port. So that's the two-piece structure. 48 is the port, and then 49 is... Well, that sits on the... 48 sits right on 49, right? It does, Your Honor. It goes into 49. And 49 is the receptacle. It's formed in the housing. But there's no separate area for the accumulation of the sealant in there. The sealant accumulates. I believe it does accumulate. The sealant accumulates in the port area, as well as then some sealant goes into the receptacle and into the air flow path. So the receptacle, it's not just a hole. It's in communication with the air flow path, which we can see there's a knot that's coming out in the figure. Well, why isn't that true in the 282 also? Because the 282 has nothing. It is nothing more than a hole that has no structure. There's no... There's nothing formed in the housing. There's nothing that concealing receives. And the Claim 27 explicitly requires there to be a... that there's a receptacle that's formed in the housing as a separate piece, and a hole doesn't satisfy that. Well, I'm not... I'm sorry. I'm not seeing the difference between what's shown on page 145 and the 282. Well, Your Honor... Where is there a separate receptacle here? Because you say that 48 is in direct contact with 49. That's correct, but 49 has structure. There's structure that is going to surround that port and receive that port. There's nothing like that in the 282. The 282 is just a hole. There's two... Yeah, but the parent's not talking about a receptacle for what's listed here as 48. It's talking about a receptacle for the sealant, right? No, it's talking about a receptacle that's formed in the housing. For the sealant. No, it has... The port goes into the receptacle, just like it does in Figure 2, which is why the jury found infringement, which isn't even challenged on appeal. There's two separate structures. There's the structure for the receptacle and a separate structure for the port. And in Figure 2, both of those structures are going to receive sealant and are going to sealing the sealant. Looking at the 282 on 2363, it seems as though, just as on page 145, the bottle of sealant goes into a port or whatever you want to call it. And why isn't that the same structure as we see on 145? Because there's no receptacle, Your Honor. There's simply an opening in the housing and there's nothing underneath it. The port just simply sits there. There's no separate structure. There's nothing there. Does that not guide the user in, that hole? I don't know that it guides the user in. It's just a hole. It's just where the port sits. Why isn't that a receptacle? Because it's not formed in the housing. There's no housing around it. If we look at Figure 2, there's a housing that forms the receptacle. And there's no receptacle that's going to sealingly receive. Both experts admitted that. Is your argument really the absence of communication with the airflow path? I mean, it didn't seem to be the way you were making your argument in the brief. It's an additional point. But the formed in the housing and the sealing receive are the two arguments that, for any of those three reasons, there's a receptacle that's shown in Figure 2 of the 110 patent that's not in 282. Now, the formed in the housing appears in Claim 42. The formed in the housing is not in Claim 27. It is, Your Honor. It is. The element is a receptacle formed in said housing in communication with said airflow path and a port disposed in said receptacle in communication with said airflow path. So the idea here, if I'm understanding correctly, is that in the 282, there's no floor on which 48 rests in the 110? That's part of the structure, Your Honor. There's also no surrounding wall structure. There's no floor. There's nothing that's formed in the housing in 282. It's just an opening. Well, there is a surrounding wall structure, isn't there? I think if you're looking at the demonstrative that was used at trial, there's lines that have been created. Well, I can't look at the demonstrative that was used at trial because you guys didn't include it in the joint appendix. It's in their brief. They put it into their brief. And that in the brief, there's been some lines that have been drawn in, but those aren't in the actual 282. The 282 has no walls. It is just an opening at the top that the port sits in. And there's nothing underneath the port floor. Looking at 2363, why aren't the walls there? There's no walls there. It is just a – both experts agreed there were no walls there. And that should be substantial evidence to support the jury's verdict. If I might just briefly mention one thing on the injunction, Your Honor. In terms of the sale issue, one of the things that has been ignored by tech is the issue of the design wins. And there clearly were design wins here. So when AMI says it hasn't lost sales, what it hasn't lost since it bought the patent are design wins. There have been additional lost sales. That's why there's a damage amount that was awarded. That's why there's supplemental damages. So there is ongoing harm because once you have a design win, you're locked in into the market. And for those car platforms, the manufacturers, the original equipment manufacturers, don't change what is going in to the car. They wait until the next platform comes out. So there's a long lock-in, maybe several years, where these products continue to be sold. So that is the irreparable harm. And there are ongoing losses that are accumulating. In the absence of an injunction would be additional design wins, and there would be further incumbency to benefits, and that's what leads to the irreparable harm. So let me ask you a question. For purposes of your damages analysis, was the base that was used for calculating the royalty, did that begin as of the date of infringement, or did it only begin as of the date of the purchase? I believe it went back to the date of infringement, Your Honor. How could the reasonable royalty here be determined based on what happened in 2007, when your clients weren't even in the picture at that point? Well, I think as a matter of law, the date of first infringement has to be the date of the hypothetical negotiation. So that's when... Right, and the date of the first infringement here was before your clients acquired the patent, right? That is correct, Your Honor. So why are they sitting there at the hypothetical negotiation when they didn't even enter the picture of it? Well, the evidence from both experts was that they're not necessarily sitting there. Their interests are taken into consideration. Why? They didn't own the patent. How can their interests be taken into account? Well, and it's through the Book of Wisdom that both experts... What Book of Wisdom case says you take somebody who didn't own the patent and put them at the hypothetical negotiation? Well, I think what the Book of Wisdom says is you consider what happened in the future. What case? There's not a particular case that's precisely like our case. All the Book of Wisdom cases involve looking at sales that happened later, not bringing in parties who didn't have a connection to the patent at an earlier time, right? That's correct, Your Honor. But I think that what the Book of Wisdom says is you look at interests that occur later. What are the facts that have occurred later? And these are additional facts that would be taken into consideration. At the very most, the IDQ could be saying, well, AMI is going to purchase it 10 years from now. I mean, even if you're right that you take that into account, how could you possibly take into account an interest before it actually exists? I think that's what the Book of Wisdom allows you to do in terms of the facts here. And what we have is both experts agree. But there are no cases that have done that. I agree with that, Your Honor. But there are cases that have talked about using the Book of Wisdom and both experts here, and I think it's a factual question as to what interests are taken at the hypothetical negotiation. Both experts agreed. It was only after trial that Tech came up with a different argument. Otherwise, their expert and our expert agreed that AMI's interests would be taken into consideration at the hypothetical negotiation. Well, their expert appeared to conclude that that was legally compelled, whereas that's an issue. Their expert testified as to the interest that would be taken into consideration at a hypothetical negotiation. I don't believe she felt legally compelled to do that. Well, she said because of the Book of Wisdom. And she explained in her words what that was, in her expert opinion what that was. Well, I read expert opinions as to the meaning of the legal principles for the Book of Wisdom. Well, I think the question, though, is whether the interest and the facts that you look at for Georgia-Pacific factors to do this hypothetical negotiation is a factually intensive exercise, and that's something that the experts should, that if they agree upon, is something the jury can put weight upon. I don't think it's a legal determination as to what facts and interests those experts use to do their hypothetical negotiation. Isn't your hypothetical participant barred by the rule against perpetuity? That was a joke. All right, Mr. Gibson, you're into your rebuttal time. We'll give you a minute. All right, thank you. I'm not going to pile on, but I'm going to just add to what Judge O'Malley said at the beginning. At the bottom, I use briefs as an opportunity to teach my clerks as well. In the bottom of that first paragraph, I have underlined bad writing. Well, I'm sorry for that, Your Honor. Very, very sorry. You heard our discussion of the 581, and the argument that Mr. Gibson seems to be making now is a bit different than the argument in the brief. So help us understand whether there was a receptacle here. Thank you, Your Honor. I would like to do exactly that. The argument as just stated is largely based on the notion that it is simply an opening and it's not formed in the housing. But at AMI's insistence… They say it doesn't have walls or a floor, as I understand it. Right. And the claim construction, which the judge adopted AMI's proposal there, the judge said, and this is on page 7 of the claim construction order, A25.7, nor does the claim language or specification require that the receptacle be integral to the housing. The court rejected the notion that there was some particular structure to the receptacle and said that, quote, a person skilled in the art would understand receptacle as something that receives or contains something. So the notion that there has to be a wall or something formed in the housing is contrary to the court's construction and AMI's own arguments that led to that construction. And even in their brief on page 20, they admit that a wall is not necessary to have a receptacle. They sort of back away from their expert, Dr. King, who did talk at length about how a wall would have made this hole a receptacle. And in fact, there is no such requirement of a wall. That's contrary to the construction and now on appeal they sort of disavow the notion of a wall. So the hole in which the socket 18 of the 282 sits is a receptacle. I would like to, before my time is up... But his whole point is that it has to be actually formed in the housing, and to be formed in the housing it has to be in communication with the airflow. How is that found in the 282? What structure shows that? The premise is incorrect, Your Honor, because to be formed in the housing, it simply has to be a hole that's in the housing that the port can then sit inside. It actually doesn't make sense to say that it would communicate with the airflow path, because that would, in AMI's own brief, they say that would cause leaks. To have the airflow and the sealant go into the port and then from there into the tire. I would like to, before my time is up, just so he doesn't get... The whole idea of the port is that it's screw sealed, correct? That's correct. It has threads that the bottle of sealant screws into. And that's what the 282 sits, right? That's exactly right. I would just like to say that we also think that the summary judgment of invalidity of the 110 should be reversed. That boils down to the question of whether the additional hose, the whole purpose of which is to, as the patent explicitly says, to quickly and easily inflate a tire without using the sealant, whether that's connectable to the tire. The specification directly answers that. It says that the additional hose is connectable to the tire. The magistrate judge erred by reading that limitation to apply to a prior art device whose hose is not connectable to the tire. Okay. Thank you, Mr. Jackson. Mr. Gibson, I don't think any of the cross appeal was addressed, so there's nothing further to discuss. I would note that your certificate, if you could just stand here for a moment, that your certificate at the end of your brief says that the brief is in 14-point type, and that's not correct, is it? The brief is in 12-point type. You shouldn't be certifying something that's not correct. All right. We thank both counsel. The case is submitted, and that concludes our session for this morning.